UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LINDA PATRICK,

      Plaintiff,

v.                                                                                         Case No. 1:07-CV-865

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,                                                    HON. GORDON J. QUIST

      Defendant.
_____/

## OPINION

      Plaintiff, Linda A. Patrick, has sued Defendant, Hartford Life and Accident Insurance Company ("Hartford"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461, seeking review of Hartford's denial of long-term disability benefits for Patrick.  Presently before the Court are both parties' motions for entry of judgment pursuant to the procedure set forth in *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998), for determining ERISA denial of benefits claims.  For the reasons set forth below, the Court will grant Patrick's motion for entry of judgment and enter an order reversing Hartford's denial of benefits.

### I.  Facts

      As an employee of Siemens Dematic Corporation, Patrick was covered by a Group Long Term Disability Plan ("Plan") issued and administered by Hartford.  (Administrative Record ("AR") at 629.)  The Plan provides benefits for a person who becomes disabled while insured under the Plan and remains disabled beyond the 180-day Elimination Period.  (AR at 630.)  A person is disabled under the Plan when such person is prevented from performing the essential duties of the occupation.

(AR at 643.) After 24 months, the test for disability becomes whether the claimant is prevented from performing one or more of the essential duties of any occupation. (AR at 643.) In the event the claimant is disabled by reason of mental illness, benefits are limited to a total of 24 months. (AR at 634.)

Patrick was born on March 19, 1949. She began working at Siemens on October 26, 1992, and stopped working there on September 5, 2003. On February 13, 2004, Patrick completed an application for long-term disability benefits. (AR at 563.) As part of her application, Patrick submitted a letter by her treating physician, Dr. Norman Weber, along with an Attending Physician's Statement. Dr. Weber's letter stated that Patrick "has Fibromyalgia Syndrome, a chronic disabling problem that was diagnosed in 1997." (AR at 372.) According to Dr. Weber, Patrick "has experienced a progressive decline in her abilities to perform essential functions of daily living," and as a result, he considered "her disabled and unable to return to work, effective September 8, 2003." (AR at 572.) The Attending Physician's Statement of Disability, completed by Dr. Weber on January 29, 2004, listed her primary diagnosis as Fibromyalgia Syndrome and her secondary diagnosis as Unipolar Depression. (AR at 605.) The statement notes that Patrick has subjective symptoms of "burning in knees, hyposomnia, pain in hips, thighs, & calfs." (AR at 605.) Dr. Weber listed the physical examination findings as "normal spinal exam, no joint deformities . . . no tremors or weakness." (AR at 605.) Dr. Weber further noted that Patrick "exhibits slow gait & multiple trigger points in the upper extremities, trunk, and lower extremities." (AR at 605.) Dr. Weber stated that Patrick had limited tolerance for standing, sitting, and walking, and that "essentially all typical activities of daily living are limited to a significant degree." (AR at 606.)

On May 13, 2004, Hartford approved Patrick's claim for long term disability benefits effective from March 6, 2004. (AR at 492.) Hartford informed Patrick that after 24 months, March 6, 2006, she would remain disabled only if she was prevented from performing the essential duties of any occupation. (AR at 492.) The letter further informed Patrick that Hartford expected her to pursue a claim for disability with the Social Security Administration and that any award would be deducted from her monthly benefit pursuant to the Other Income provision of the Plan. (AR at 495.) On June 24, 2004, Patrick was granted Social Security benefits based on "fibromyalgia and depression." (AR at 467.) The Administrative Law Judge ("ALJ") found that Patrick's claim of intractable and debilitating pain was credible, that Patrick was unable to perform her past work, and that "claimant does not have transferable skills to perform other work within her residual functional capacity." (AR at 468.) As a result of the award, Patrick refunded $4,438.40 to Hartford, and Hartford reduced her monthly benefit to $768.70. (AR at 412.)

On September 29, 2005, Hartford wrote Patrick and informed her that as of March 6, 2006, she must be considered disabled under the Any Occupation provision of the plan to remain eligible for benefits. (AR at 29.) On October 26, 2005, Dr. Weber completed Hartford's required form entitled Attending Physician's Statement of Continuing Disability. (AR at 386.) Dr. Weber listed Patrick's primary diagnosis as Fibromyalgia Syndrome and her secondary diagnosis as Unipolar Depression (Reactive). (AR at 386.) Dr. Weber noted that Patrick has a limited tolerance for standing, walking, and carrying. (AR at 387.) For sitting, Dr. Weber stated that Patrick "needs to change position frequently due to generalized discomfort." (AR at 387.) On the Physical Capacities Evaluation Form ("PCE"), Dr. Weber listed that Patrick is able to sit for one to two hours at a time for a total of eight hours in a day and that she is only able to stand or walk less than one hour at a time and for no more than an hour throughout the day. (AR at 388.)

3

On December 17, 2005, Hartford received an Employability Analysis Report based on Dr. Weber's most recent evaluation.  The report noted that Dr. Weber limited Patrick's capability for sitting to one to two hours at a time up to eight hours in a day and for walking and standing to less than one hour per day.  (AR at 332.)  Based on this information, the report concluded that Patrick was capable of working two jobs that were prevalent in the national economy, met her functional limitations, exceeded her required earnings potential, and were commensurate with her education and experience: Information Clerk and Surveillance System Monitor.  (AR at 332.)

Because Dr. Weber listed Patrick as having a secondary diagnosis of depression, Hartford sent Dr. Weber a Behavioral Function Evaluation Form, which Dr. Weber completed on March 27, 2006.  The form asked Dr. Weber specific details regarding Patrick's ability to work from a mental health perspective only.  (AR at 324.)  Dr. Weber concluded that Patrick was unable to work and that no modifications would permit her to work.  (AR at 320.)  Further, Dr. Weber noted that Patrick had limited tolerance for prolonged sitting, limited memory recall, and was lethargic on a continuing basis.  (AR at 320.)

On April 20, 2006, Hartford wrote Patrick informing her of its determination that Patrick was not disabled under the Any Occupation provision of the Plan.  Hartford stated that based upon the Employability Analysis Report, and the PCE it relied upon, Patrick's fibromyalgia did not prevent her from working as an information clerk or a surveillance system monitor.  (AR at 39.)  However, Hartford determined that Patrick continued to remain disabled due to an adjustment disorder.  (AR at 36.)  Therefore, Hartford informed Patrick that it would continue to pay benefits, but only for an additional twenty-four months – through March 6, 2008 – pursuant to the Plan's mental illness limitation.  (AR at 36.)

Patrick appealed Hartford's decision and supplemented her appeal with an additional letter by Dr. Weber. In this letter, Dr. Weber stated that "Patrick's disabling medical condition is Fibromyalgia Syndrome, which is a physical condition, that has caused or aggravated other conditions such as depression, which are often a by-product of this physical condition." (AR at 177.) The letter further noted that because of "Patrick's medical diagnoses and disabilities, she is not capable of performing any work or occupation for which she is, or may become, reasonably qualified to perform by education, training or experience." (AR at 176.)

During the appeal process, Hartford sent Patrick's file to Dr. Tracey Schmidt at Reed Review Services for an independent review. Dr. Schmidt reviewed Patrick's medical records and spoke with Dr. Weber over the telephone. (AR at 146.) During this conversation, Dr. Weber stated that Patrick was unable to return to work because of a "combination of pain, psychiatric issues and not wanting to return to work." (AR at 146.) When asked what evidence existed of Patrick's inability to work in a sedentary capacity, Dr. Weber responded, "subjective symptoms of pain. She has relatively little findings on exam." (AR at 146.) Dr. Schmidt's report further summarized her conversation with Dr. Weber:

> I asked him what had changed, which now supports her inability to return to work in a sedentary positions and he said pain and psych issues. I asked him to what degree somatization issues are impacting her physical condition and functioning and he reported "a part". He did read a C-spine x-ray from October 2006 that showed some degenerative changes.[1]

(AR at 146.) Dr. Schmidt also noted that the "file mentions pain but lacks any notes from pain management or behavioral therapy for pain management. The claimant reports back pain but the file lacks any radiological imaging of the spine." (AR at 147.) Dr. Schmidt repeatedly referenced Dr.

---

[1] Somatization is the conversion of anxiety into physical symptoms.

5

Weber's PCE finding that Patrick was capable of sitting one to two hours at a time for no more than eight hours in a day. (AR at 147.) Based on these findings, Dr. Schmidt concluded that the "file lacks sufficient medical evidence of a physical functional capacity impairment to a full time sedentary occupation. . . ." (AR at 149.)

On February 23, 2007, Hartford informed Patrick that it denied her appeal. The letter stated that "[p]hone discussions with Dr. Weber noted that Ms. Patrick had no interest in returning to work and had somatization issues which were prominent. . . ." (AR at 50.) The letter further stated that Dr. Weber "noted that somatization issues are playing a significant role in her physical conditioning and functioning."[2] The letter recognized that Dr. Weber's most recent correspondence expressing his conclusion that Patrick was unable to work in any capacity appeared to conflict with his functional capacity evaluation, from a year earlier, stating that Patrick could sit for up to eight hours in a day. (AR at 50.) Hartford, however, noted that Dr. Weber did not provide a statement addressing why the previous restrictions were no longer applicable. (AR at 50.) Additionally, Hartford referenced Patrick's ability to perform household chores and participate in water aerobics on an occasional basis. (AR at 50.) Because of these factors and the lack of medical tests substantiating work restrictions based on her physical condition, Hartford denied Patrick's appeal. (AR at 50.) Patrick filed suit in this Court seeking review of Hartford's determination denying her disability benefits.

---

[2] As previously recounted, these characterizations of Dr. Weber's statements are, at best, inaccurate. Dr. Weber stated only that somatization issues played a "part" in her inability to work. Further, Dr. Weber said that Patrick was unable to return to work because of a "combination of pain, psychiatric issues and not wanting to return to work."

6

## II. Analysis

### *Standard of Review*

A threshold issue the Court must decide is the standard of review that applies to Hartford's decision to deny benefits. A plan administrator's denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). The *de novo* standard of review applies to both the factual determinations and legal conclusions of the plan administrator. *See Wilkins,* 150 F.3d at 613.

Where the plan clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, the determination is reviewed under the "arbitrary and capricious" standard. *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991). While no particular language is necessary to vest the plan administrator with discretion to interpret the plan or make benefit determinations, the Sixth Circuit "has consistently required that a plan contain 'a *clear* grant of discretion [to the administrator] to determine benefits or interpret the plan.'" *Perez*, 150 F.3d at 555 (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1993) (italics and alteration in original)). The Plan contains the following language: "We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (AR at 642.) Patrick concedes that this language is a clear grant of discretion to Hartford to make benefit eligibility determinations, and the Court concludes that this language is sufficient under the law to support application of the arbitrary and capricious standard to Hartford's decision.

Under the arbitrary and capricious standard, courts "will uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Glenn v. Metlife*, 461 F.3d 660, 666 (6th Cir. 2006), *cert. granted*, --- U.S. ---, 06-923 (Jan. 18, 2008) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). However, the standard "is no mere formality," *id.*, and does not require courts "merely to rubber stamp the administrator's decision," *id.* (quoting *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004)). Rather, courts "are required to review 'the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Id.* (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).

At issue in the present case is whether Hartford acted arbitrarily and capriciously in determining that Patrick's fibromyalgia, standing alone, did not render her disabled. Because Hartford does not contest the diagnosis itself, only whether the condition renders her disabled under the Any Occupation provision of the Plan, the Court's determination hinges on the extent Patrick's fibromyalgia affects her functional capacity. There are several factors that impact the Court's analysis of Patrick's claim. The first is the conflict that exists when the entity authorized to decide whether an employee is eligible for benefits is the same entity that pays those benefits. *Glenn*, 461 F.3d at 666. The existence of this possible conflict of interest "should be taken into account as a factor in determining whether [Hartford's] decision was arbitrary and capricious." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (quoting *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n. 4 (6th Cir. 2000)). While this does not change the standard of review, it is a factor in applying that standard. *Id.* at 293.

This Court must also give consideration to the fact that the Social Security Administration found her disabled based on both her fibromyalgia and depression. Specifically, the ALJ found that Patrick's "allegations of intractable and debilitating multiple joint pain and a disabling depression are credible." (AR at 467.) Moreover, the ALJ determined that Patrick's "impairments prevent her from sitting, standing, or walking for prolonged periods or concentrating upon tasks." (AR at 468.) Thus, the ALJ concluded that "[b]ased upon [Patrick's] residual functional capacity and vocational factors, jobs which she is capable of performing do not exist in significant numbers in the national economy." (AR at 468.) Additionally, Hartford was aware that Patrick was awarded Social Security benefits since it demanded – and received – re-payment from her and adjusted her monthly benefit accordingly.

Thus, "[h]aving benefitted financially from the government's determination that [Patrick] was totally disabled, [Hartford] obviously should have given appropriate weight to that determination." *Glenn*, 461 F.3d at 669. In contrast, Hartford never discussed the Social Security decision in its initial determination or on appeal. Admittedly, the Social Security decision is not completely relevant because much of that decision discusses Patrick's disability from a mental health perspective, a conclusion Hartford does not contest and for which it is paying benefits. However, this alone does not warrant ignoring the decision because certain findings of the ALJ are relevant to Patrick's claims of functional incapacity based on fibromyalgia alone. Specifically, the ALJ found Patrick's allegations of *debilitating* multiple joint pain to be credible and that her impairment prevents her from sitting for prolonged periods of time. (AR at 467-68.) In light of this, Hartford's failure "to consider the Social Security Administration's finding of disability in reaching its own

9

determination of disability does not render the decision arbitrary *per se*, but it is obviously a significant factor to be considered upon review." *Id*. (emphasis in original).

### *Hartford's Initial Denial of Benefits*

Hartford's initial denial of benefits was not arbitrary and capricious because it was supported by substantial evidence, namely Dr. Weber's own conclusions. Hartford denied Patrick benefits based on fibromyalgia because it determined that her condition did not restrict her functional capacity to the point that she was prevented from working a sedentary job. Specifically, Hartford relied on Dr. Weber's Attending Physician's Statement and accompanying PCE completed on October 26, 2005. With regard to her physical limitations, Dr. Weber noted that Patrick "cannot complete most household tasks." Regarding her ability to sit, Dr. Weber stated that Patrick "[n]eeds to change position frequently due to generalized discomfort." Dr. Weber also listed her psychiatric impairment as "major," meaning that she has avoidant behavior, neglects family, and is unable to work. However, on the PCE, Dr. Weber found that Patrick was able to sit for one to two hours at a time up to eight hours in a day.

In light of this evidence, it was reasonable for Hartford to conclude that Patrick was unable to work due to her major psychiatric impairment but that her fibromyalgia only restricted her to the extent detailed in Dr. Weber's PCE. Although the PCE stated that Patrick needs to change positions frequently while sitting and that Patrick needs assistance with household tasks, it was not unreasonable for Hartford to conclude that the PCE reflected this limitation in finding her able to sit for one to two hours at a time up to eight hours in a day. The Employability Analysis Report, prepared based on these restrictions, found two sedentary employment opportunities that were

commensurate with her education and work experience. Therefore, Hartford concluded that her fibromyalgia did not render her disabled under the Any Occupation provision of the Plan.

Patrick contends that Hartford simply changed its earlier determination finding her disabled without any evidentiary basis. However, Hartford's earlier determination that Patrick's fibromyalgia rendered her disabled was based on her inability to perform her own, non-sedentary position. When the analysis changed to the Any Occupation provision of the Plan, Hartford properly relied on Dr. Weber's PCE in finding Patrick capable of working a sedentary position. Because this determination was based on Dr. Weber's own uncontradicted conclusions, Hartford's denial of benefits was based on substantial evidence and was not arbitrary and capricious.

### *Hartford's Denial of Benefits on Appeal*

Hartford's decision on appeal to deny benefits is different. After Hartford denied Patrick benefits based on her fibromyalgia on October 17, 2006, Patrick sent Hartford an updated Physician's Statement of Disability prepared by Dr. Weber. (AR at 175.) Of particular note, the statement re-emphasized some of Dr. Weber's previous statements that Patrick "requires daily naps every afternoon in order to regain some strength." (AR at 175.) Additionally, the letter notes that Patrick "continues to rely on her significant other to assist with several household tasks that she cannot manage on her own." (AR at 176.) Most importantly, Dr. Weber stated that "Patrick's disabling medical condition is Fibromyalgia Syndrome" and that due to her disability, she is "totally and permanently disabled from any and all employment at this time." (AR at 175-76.) Although Hartford recognized that this statement conflicted with and repudiated Dr. Weber's prior PCE, Hartford did not credit Dr. Weber's conclusions because they were not supported by objective

evidence or an updated PCE. (AR at 50.) Supporting Hartford's determination was the report of the independent reviewer finding that Dr. Weber's conclusions were not supported by medical evidence.

Hartford's determination does not withstand scrutiny in several respects. First is Hartford's justification for not crediting Dr. Weber's most recent conclusion that Patrick was completely disabled because the file lacked objective medical evidence supporting her disability. Courts have often grappled with the role of objective evidence in fibromyalgia cases. Although the United States Court of Appeals for the Sixth Circuit has not decided when and in what context an ERISA administrator can rely on a lack of objective evidence in denying a claim, decisions from several other circuits help the analysis. A plan administrator may not deny a claim based on a lack of objective evidence supporting a doctor's diagnosis of fibromyalgia because it is not a condition verifiable by objective evidence. *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003). "A distinction exists however, between the amount of fatigue or pain an individual experiences, which as *Hawkins* notes is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capacities, which can be objectively measured." *Williams v. Aetna Life Ins. Co.*, --- F.3d ---, 2007 WL 3230408, at *5 (7th Cir. Nov. 1, 2007). Thus, a plan administrator does not act arbitrarily and capriciously in denying a claim for benefits when the claimant fails to provide objective evidence supporting her functional limitations. *Id.*; *see Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 16 n. 5 (1st Cir. 2003); *see also Pralutsky v. Metro. Life Ins. Co.*, 435 F.3d 833 (8th Cir. 2006).

The cases cited in the preceding paragraph have one thing in common: the administrator either requested objective evidence supporting the doctors' conclusions or the initial denial letter highlighted the administrator's concern in this regard. *Williams*, 2007 WL 3230408, at *5 ("The

administrator clearly explained this concern in both its denial letters to [claimant].); *Pralutsky*, 435 F.3d at 840 ("MetLife specifically identified and requested additional clinical evidence supporting the severity of [claimant's] condition."). Additionally, the only Sixth Circuit case allowing a plan administrator to disregard a doctor's conclusion of disability based on lack of objective evidence did so because the plan *required* objective evidence. *Boone v. Liberty Life Assur. Co. of Boston*, 161 F.App'x 469, 473 (6th Cir. 2005). In the present case, the Plan did not require objective evidence and Hartford never requested additional objective evidence. Instead, Hartford rejected Dr. Weber's most recent statement because he did not provide a new PCE; yet, it never requested a new PCE or gave any indication that it desired one. Moreover, Hartford continued to rely on one of Dr. Weber's previous PCEs while noting at the same time that Dr. Weber's most recent statement appears to contradict that PCE. This selective reliance on Dr. Weber's opinions and reports does not make sense if Hartford was being objective. *See Glenn*, 461 F.3d at 674. While the Court recognizes that Hartford did not have to accord special deference to Dr. Weber as Patrick's treating physician, neither could it "arbitrarily repudiate or refuse to consider [his] opinions. . . ." *Id.* at 671.

In addition, Hartford's file review of Patrick's claim was not objective. Although the file review is only one factor to consider under the arbitrary and capricious standard of review, *Calvert*, 409 F.3d at 295, the Court notes that Hartford discredited Dr. Weber's conclusions based solely on a lack of objective evidence (for which it never asked) when it had the option to examine Patrick and obtain its own functional capacity evaluation. If Hartford believed that Patrick was able to work despite her fibromyalgia and reports of debilitating pain, it could have ordered its own examination instead of relying on one statement in a previous PCE by the very same doctor whose current opinion it was discrediting. By not asking Dr. Weber to supply an updated PCE and not ordering its own

examination, Hartford acted arbitrarily and capriciously in denying Patrick's claim based on a file reviewer's conclusion that there was insufficient medical evidence supporting Patrick's inability to work.

Furthermore, there were many factual inconsistencies throughout Hartford's determination. First, Hartford described Dr. Weber as stating that Patrick "had somatization issues which were prominent" and "that somatization issues are playing a significant role in her physical conditioning and functioning." (AR at 50.) In fact, Dr. Schmidt's report said that Dr. Weber reported somatization issues playing only "a part." (AR at 146.) Moreover, Hartford claimed that there was no evidence supporting Dr. Weber's conclusions that his prior restrictions were no longer applicable. However, Dr. Schmidt noted in her report that Dr. Weber "did read a C-spine x-ray from October 2006 that showed some degenerative change." (AR at 146.) Finally, Hartford relied on Patrick's "reports of doing the laundry, vacuuming, cleaning, making meals, shopping for groceries, and swimming three times per week." (AR at 50.) Most of this is based on medical records from November 2005. (AR at 143.) However, this ignores a subsequent entry – the paragraph immediately above the November 2005 entry – that Patrick is "[u]nable to carry laundry any more. It takes her a week to clean the house now. She can only do physical tasks 30 minutes." (AR at 143.) Additionally, it ignores Dr. Weber's Attending Physician's Statement that "she cannot complete most household tasks and needs the assistance of her boyfriend." (AR at 387.) Such a selective reference to the medical records is arbitrary and capricious.

In sum, the only evidence supporting Hartford's determination that Patrick was able to work in a sedentary capacity was Dr. Weber's PCE stating that Patrick could sit for one to two hours at a time up to eight hours in a day. However, Dr. Weber concluded otherwise in his most recent

14

correspondence attesting that Patrick was completely and totally disabled based on her fibromyalgia. Although Dr. Weber did not provide an updated PCE describing what her functional limitations were, Hartford neither requested one nor gave any indication that it was considering ignoring Dr. Weber's conclusions based on the absence of an updated PCE. By not crediting one of Dr. Weber's opinions while relying on another, Hartford engaged in a selective interpretation of the medical record unsubstantiated by the independent file review. Finally, the factual inconsistencies in Hartford's denial letter, Hartford's conflict of interest, and Hartford's omission of the Social Security decision in its decision all reinforce the Court's conclusion that Hartford's decision on appeal was not based on substantial evidence and was arbitrary and capricious.

### III. Conclusion

For the reasons set forth above, the Court will grant judgment on the administrative record in Patrick's favor and reverse Hartford's denial of disability benefits based on her fibromyalgia.

A separate Order will issue.


Dated: March 4, 2008               /s/ Gordon J. Quist
                                 GORDON J. QUIST
                                 UNITED STATES DISTRICT JUDGE